## Ellis v. Stine

*Egli, Walter & Long,* for plaintiff.
*Davis & Katz,* for defendant.

GATES, P. J., December 22, 1964. — On February 28, 1964, plaintiff filed a complaint in trespass stating his case in two counts. In the first count, plaintiff alleges that, on April 7, 1956, he entered into an agreement and stipulation, attaching a copy of the agreement and stipulation to the complaint, with the New York and Pennsylvania Motor Express, Inc. (hereinafter called "corporation") settling, compromising, and ending a law action which plaintiff brought against the corporation in Berks County the previous year. It is alleged in the complaint that the agreement settled a wage claim which this plaintiff had against the corporation. The amount of the compromise was $90,000, and the agreement provides for a method of payment over a period of time with the right of the corporation to accelerate the payments.

The agreement also provides that plaintiff deliver to the Berks County Trust Company of Reading, Pa., all shares of stock owned by him in the corporation and that these shares represented 40 percent of the outstanding capital stock of the corporation.

The agreement was signed by the corporation as follows:

"New York and Pennsylvania Motor Express, Inc."

"Russell R. Stine, President"

"Arthur L. Berger, Asst. Secty."

Although the copy attached to the complaint does not reveal it, the witness clause of the agreement recites that the corporation "caused its common or corporate seal to be hereunto annexed."

Plaintiff also executed an irrevocable power of attorney which authorized the corporation or its nominee to vote the shares of stock held in escrow. A copy of the power of attorney is attached to the complaint. Although not revealed by an examination of the exhibit, the complaint states that the nominee in the power of attorney was Russell R. Stine, defendant. The power

of attorney also entitles the nominee to receive all dividends. The complaint further alleges that, as a result of the agreement and stipulation, the defendant became virtually [1] the sole stockholder of the corporation. The agreement contemplates a merger of the corporation and provides that a proportionate interest in the successor corporation shall be substituted with the escrow agent in the event of a sale or merger.

The complaint asserts that defendant negotiated with Speedway Carriers, Inc. (hereinafter referred to as "Speedway") for a merger during the years 1956 and 1957. The complaint alleges that the corporation had suffered heavy deficits in its business operation in the years 1954, 1955, and 1956, and that Speedway had net profits of $10,000 in 1955 and $1,700 in 1956, carrying, however, an earned surplus deficit of approximately $6,800 in 1955, $5,000 in 1956. The complaint avows that ". . . notwithstanding the financial status [2] of Speedway Carriers, Inc., Russell R. Stine effectuated a merger with the company of New York and Penn as of January 1, 1958. . . ."

One year and 18 days after the merger, Speedway discontinued the monthly payment to plaintiff which it assumed as a result of the merger under the terms

---

[1] The plain inference is that there is another or other shareholders.

[2] It is difficult to understand the import of this allegation, because it neither characterizes Speedway's financial status as good or bad, but presumes that the allegations as to net profits and earned surplus deficits in and of themselves indicate an unsound financial picture. We do not believe that this is the only conclusion that can be drawn. We can visualize a corporation which would show no earnings and no earned surplus deficit, yet still be a financially sound corporation, since it invested its earning from time to time during the current year in capital assets. There are other factors which must be known before we can conclude from the meager information given to us in this Complaint that Speedway was in financial straits during 1955 and 1956. A small corporation with limited capital assets might well reflect a profitable year with these figures.

of the agreement with plaintiff. In view of this allegation in the complaint, it is difficult to reconcile it with an allegation that defendant was negligent in failing to notify the plaintiff of the fact of the merger.

On January 19, 1959, the date Speedway discontinued payment to plaintiff in breach of the terms of the agreement, Speedway filed for reorganization under the provisions of the Bankruptcy Act, its liabilities exceeding its assets by about $300,000.

The complaint maintains that at no time did the defendant [3] substitute Speedway stock in the escrow as provided for in the agreement, much to the pecuniary and financial loss of plaintiff.

Plaintiff further alleges that his percentage interest in ownership of the corporation was at no time protected, to the great loss of plaintiff, nor was he notified of the negotiations to merge or the fact of merger.

On April 16, 1959, plaintiff filed his claim in the bankruptcy court for the unpaid balance under the agreement in the amount of $60,000.

The complaint thereafter contends that defendant was negligent in committing a breach of duty in violation of the fiduciary relationship created in and by the facts stated in the complaint. The specific acts alleged as being negligent ones are:

A. In failing to substitute Speedway stock, value for value, for New York and Penn, with the escrow agent;

B. In failing to protect plaintiff's percentage interest in the corporation;

C. In failing to notify plaintiff of the merger negotiations;

---

[3] Not a little difficulty in understanding this Complaint and agreement arises out of language. In the agreement, the defendant is New York and Pennsylvania Motor Express, Inc., but in this Complaint, the defendant is Russell R. Stine.

D. In failing to notify plaintiff of the accomplished merger;

E. In failing to investigate and examine the financial structure of Speedway prior to merger;

F. Allowing the merger to be accomplished without a full investigation and examining into the financial structure of Speedway;

G. In failing to protect the financial interests of the plaintiff as required by the stipulation and agreement.

In the second count, plaintiff purports to state a case entitling him to damages for fraud and deceit practiced by defendant on plaintiff. The acts or nonactions of defendant alleged as being fraudulent are the reliance by plaintiff on the fiduciary relationship created by the agreement; the silence of defendant with respect to the proposed merger; the failure of defendant to notify plaintiff of the merger; the failure to fully investigate the financial status of Speedway causing plaintiff to be misled concerning the financial strength and ability of Speedway to meet its obligations under the terms of the agreement; that defendant knew or should have known and failed to disclose to plaintiff that Speedway was in such poor financial condition that a reasonably prudent man would not invest his money in Speedway; that defendant was "reckless in representing by his silence to the plaintiff that all was well and that he thereby induced the plaintiff to believe that his interests were being protected. . . ."

Defendant filed preliminary objections to the complaint on June 17, 1964. The preliminary objections are in the nature of a demurrer contending that plaintiff failed to state a case in trespass or a cause of action based on fraud. Defendant's demurrer is also in the nature of a motion to strike the complaint, or, in the alternative, for more specific pleadings.

The matter was argued to us, and written briefs have been submitted.

In order to determine this issue, it is necessary to state certain legal concepts with respect to the corporate entity. In the first place, it should be noted that a certificate of stock is not a share of the capital assets of a corporation but merely evidence thereof: Act of May 5, 1933, as amended, P. L. 364, art. VI, sec. 607, 15 PS §2852-607. Shares in a corporation are the units into which the shareholder's rights to participate in the control of a business corporation, in its surplus or profits, or in the distribution of its assets, are divided: Section 2 of the beforementioned act, 15 PS §2852-2. A shareholder is the registered owner of shares in business corporations: Section 2, supra.

A corporation is the creature of statute and the corporation entity has had inestimable value in the economic growth of our country. It is a legal entity which may sue or be sued in its true corporate name rather than in the name of its officers: Pennsylvania Rules of Civil Procedure 2177; Edinboro Academy v. Robinson, 37 Pa. 210. An action may be prosecuted against a corporation by members of the corporation, and by a corporation against one or more of its officers or members: Pa. R. C. P. 2178. Distinction must be made between an action brought by a shareholder to redress a wrong personal to him and an action in which he seeks redress for a wrong done to the corporation, whereby he suffers an indirect loss in common with other shareholders. The latter right of action is derivative and secondary and the recovery is for the primary benefit of the corporation. In this type of case, no action in the stockholder's own name as an individual is ordinarily maintainable, and no individual recovery is ordinarily permitted: Hlawati v. Maeder-Hlawati Co., 289 Pa. 233; Cochran v. Shetler, 286 Pa. 226. In an action to enforce a secondary right brought by one or more stockholders because the corporation refuses or fails to enforce rights which could be asserted by it, the

complaint must state that each plaintiff was a shareholder at the time the transaction occurred which gave rise to the complaint and that efforts were made to secure enforcement by the corporation or the reasons for not making any such efforts: Pa. R. C. P. 1506. Where the corporation is family owned or closed, the rule must still be complied with, even though it might be fairly inferrable that the corporation under those circumstances would not take action.

As a general rule, a corporation will be held to be a separate, distinct entity from its officers and shareholders, and the fiction will be disregarded only in "appropriate cases." In deciding what is or is not an appropriate case, the well accepted principle is that the corporate personality will be disregarded in situations where its recognition would result in injustice or the perpetration of fraud, claim, or unlawful activity: Satler v. Rice, 184 Pa. Superior Ct. 550; 20 Univ. of Pitt. L. R. 330. The injustice referred to is that where an individual seeks to avoid his personal liability by using the corporate shield.

Finally, the business and affairs of every corporation "shall be managed" by a board of directors who shall be natural persons and who need not be shareholders: Act of May 5, 1933, supra, as amended, sec. 4, 15 PS §2852-401. If domestic corporations desire to merge, a procedure therefor is set forth in detail in the Act of May 5, 1933, supra, as amended, sec. 902, 15 PS §2852-902, and the merger is initiated by action of the board of directors and it further requires notice to shareholders and the approval of a majority of them.

In analyzing this case on a demurrer, we will assume that both New York and Pennsylvania Motor Express, Inc. and Speedway Carriers, Inc. are Pennsylvania corporations or that the law of the State of incorporation is the same as Pennsylvania law: Cf. Cochran v. Sheter, supra. This assumption is rendered necessary

because the complaint does not disclose the state of incorporation of these entities.

Now, with these principles in mind, we will examine the complaint to determine if it states a case in trespass against the individual defendant, Russell R. Stine.

From this complaint, we clearly see a cause of action this plaintiff would have in assumpsit against Speedway Carriers, Inc., the successor corporation, as a result of a merger with it of New York and Pennsylvania Motor Express, Inc. Plaintiff alleges a breach of the agreement and stipulation dated April 7, 1956, between himself and the corporation, its successors and assigns. This agreement is signed by plaintiff and the corporation, and it is sealed with the corporate seal. It is clearly an agreement between plaintiff and corporate defendant in the Berks County suit, wherein this plaintiff sought unpaid wages for services performed on behalf of the corporation of which he was a 40 percent stockholder. Neither the agreement nor this complaint alleges that the obligation compromised and settled by the agreement was the personal obligation of Russell R. Stine, defendant herein. As a matter of fact, this plaintiff discloses in his complaint that he has filed a claim in the bankruptcy court against Speedway for the balance due under the agreement. This plaintiff entered into a contractual relation knowingly with the corporation, and it is well settled that one who deals with a corporation, knowing it to be such, cannot enforce an individual liability against the officers or agents who act for the corporation: Bala Corporation v. McGlinn, 295 Pa. 74 at 79. We conclude, therefore, that the complaint states no case in assumpsit against this defendant.

While it is clear that the complaint discloses a cause of action against the corporation, it is equally clear that it does not state a case in trespass for damages arising

from the alleged negligence of this individual defendant for merging with Speedway.

In his brief, plaintiff argues that this is an appropriate case to pierce the corporate veil and attach personal liability to Russell R. Stine, because he was "virtually" the sole stockholder of New York and Penn Motor Expressway. Plaintiff does not cite authority for his contention, and he bottoms his argument on the allegation that defendant was virtually the sole stockholder. No case has been cited to us, nor can we find one, where the corporate veil was pierced solely because the defendant was virtually or even in fact the sole stockholder of a corporation. As we indicated hereinbefore, the type of injustice sought to be avoided by disregarding the corporate entity is the personal liability of an individual being protected by the entity. Here it would appear that the reverse is the situation. Plaintiff here is a creditor of a corporation which is now bankrupt, and he asks us to pierce the corporate veil and render an individual personally liable for a corporate obligation. We do not believe that equitable principles or rules of corporate law would permit us to do this.

Plaintiff argues in his brief that this defendant breached a duty owed to him which is imposed by law upon officers and directors of business corporations. He cites as authority the Act of May 5, 1933, P. L. 364, sec. 408, 15 PS §2852-408. This statute is as follows:

"Officers and Directors shall be deemed to stand *in a fiduciary relation to the corporation,* and shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs." (Italics supplied.)

It is immediately to be observed that the fiduciary relationship described by the foregoing statute is one

which the law creates on the part of officers and directors to the corporation. There is no fiduciary relation between officers of a corporation and creditors. Creditors of a corporation do not occupy the same relation to the directors as do the stockholders. The officers and directors of a corporation are merely agents of the corporation, and their duties and accountability are primarily to the corporation and not to its bondholders or other creditors: 19 C. J. S. §837. So it has also been held that officers or directors are not liable to third persons for damages resulting from nonfeasance or a breach of duty owing to the corporation alone: 19 C. J. S. §846.

As has been pointed out previously herein, this plaintiff is but a creditor of the corporation. By the terms of his agreement, he is not even a shareholder. In appropriate cases, a shareholder has the right to bring an action on behalf of the corporation against individual officers and directors for a breach of the fiduciary relation created by this statute. The right is subject, however, to both substantive and procedural obligations and precedent conditions, none of which are here alleged. Of course, plaintiff cannot make these allegations, because he is not a shareholder nor does he allege that he is. It follows then that he cannot sue for the breach of a fiduciary relation which is not owed to him by this individual defendant.

Finally, we are of the opinion that plaintiff has not stated a case of negligence under any circumstances. With meagre financial information pleaded, plaintiff alleges that it was negligent to merge these corporations. Even if we assume that the information given reveals a poor financial picture, we cannot conclude that it was negligent to merge two financially distressed corporations. Indeed, this is most frequently the reason for a merger. It may well be a wise course to pursue

under those circumstances. The resulting merger might result in the marriage of poor production facilities with good production facilities; or poor management personnel with competent management personnel; of nonproductive capital assets with productive ones; with increased volume which when combined generates a reasonable return on the capital invested.

At any rate, a merger is accomplished by the action of a board of at least three directors, and it would appear clear that a plaintiff complaining may not single out any of them and charge him with negligence.

Finally, plaintiff alleges, in his second count, damages resulting from fraud and deceit. The essential elements of fraud in Pennsylvania consist of (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient would thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; (5) damages to the recipient as the proximate result: Neuman v. Corn Exchange National Bank & Trust Company, 356 Pa. 442; Edelson v. Bernstein, 382 Pa. 392. The breach of a duty imposed by law or contract cannot be converted into an action for fraud and deceit merely by an allegation that the breach was fraudulent. This is in essence what plaintiff purports to do in his second count. In brief, plaintiff does not allege facts which would supply the necessary elements to entitle him to maintain an action for fraud and deceit against this defendant.

Therefore, after due and careful consideration, we make the following

## ORDER

And now, to wit, December 22, 1964, defendant's preliminary objections in the nature of a demurrer are sustained, and the complaint is dismissed. Costs to be paid by plaintiff.